# EXHIBIT G-1

US 6,931,465

**Analysis of Infringement of U.S. Patent No. 6,931,465 by Bank of America, N.A.**
**(Based on Public Information Only)**

Induction Devices LLC ("Induction Devices") provides this preliminary and exemplary infringement analysis with respect infringement of U.S. Patent No. 6,931,465, entitled "Intelligent, extensible SIE peripheral device" (the "'465 patent") by Bank of America, N.A. ("Bank of America").  The following chart illustrates an exemplary analysis regarding infringement by contactless credit cards (collectively, the "Infringing Instrumentalities").

The analysis set forth below is based only upon information from publicly available resources regarding the Infringing Instrumentalities, as Bank of America has not yet provided any non-public information.

Unless otherwise noted, Induction Devices contends that Bank of America directly infringes the '465 patent in violation of 35 U.S.C. § 271(a) by selling, offering to sell, making, using, and/or importing the Infringing Instrumentalities.  The following exemplary analysis demonstrates that infringement.  Unless otherwise noted, Induction Devices further contends that the evidence below supports a finding of indirect infringement under 35 U.S.C. §§ 271(b) and/or (c), in conjunction with other evidence of liability under one or more of those subsections.

Unless otherwise noted, Induction Devices believes and contends that each element of each claim asserted herein is literally met through Bank of America's provision of the Infringing Instrumentalities.  However, to the extent that Bank of America attempts to allege that any asserted claim element is not literally met, Induction Devices believes and contends that such elements are met under the doctrine of equivalents.  More specifically, in its investigation and analysis of the Infringing Instrumentalities, Induction Devices did not identify any substantial differences between the elements of the patent claims and the corresponding features of the Infringing Instrumentalities, as set forth herein.  In each instance, the identified feature of the Infringing Instrumentalities performs at least substantially the same function in substantially the same way to achieve substantially the same result as the corresponding claim element.

Induction Devices notes that the present claim chart and analysis are necessarily preliminary in that Induction Devices has not obtained substantial discovery from Bank of America nor has Bank of America disclosed any detailed analysis for its non-infringement position, if any.  Further, Induction Devices does not have the benefit of claim construction or expert discovery. Induction Devices reserves the right to supplement and/or amend the positions taken in this preliminary and exemplary infringement analysis, including with respect to literal infringement and infringement under the doctrine of equivalents, if and when warranted by further information obtained by Induction Devices, including but not limited to information adduced through information exchanges between the parties, fact discovery, claim construction, expert discovery, and/or further analysis.

1

**US 6,931,465**

| Claim # | Infringement |
|---|---|
| 13. A method for interfacing a peripheral device to a host comprising the steps of: | The Accused Instrumentalities perform a method for interfacing a peripheral device to host.<br><br>**Bank of America® Premium Rewards® Credit Card**<br><br>60,000 online bonus points offer — a $600 value<br><br>Earn unlimited points – 2 points for every $1 spent on travel and dining purchases and 1.5 points per $1 on all other purchases<br><br>**Low $95 annual fee[†] and no foreign transaction fees[†]**<br>**Review rates and fees[†]**<br><br>Apply Now<br><br>https://www.bankofamerica.com/credit-cards/products/premium-rewards-credit-card/ |

2

US 6,931,465

| Claim # | Infringement |
|---|---|
| receiving a request from said host; | The Accused Instrumentalities perform a method comprising the step of receiving a request from said host.<br><br>In EMV contactless transactions, communication is initiated when the peripheral device, which is the NFC-enabled card (Proximity Integrated Circuit Card or "PICC"), receives a request from the host, which is the payment terminal (Proximity Coupling Device or "PCD").<br><br>### 5.3  WUPA and REQA<br><br>The WUPA and REQA commands are sent by the PCD to probe the field for PICCs of Type A.<br><br>### 5.3.1    WUPA and REQA Command<br><br>The WUPA and REQA commands are transmitted within a short frame. The coding is specified in Table 5.2.<br><br>**Table 5.2:  Coding of WUPA and REQA within a Short Frame**<br><br><table><tr><th>b7</th><th>b6</th><th>b5</th><th>b4</th><th>b3</th><th>b2</th><th>b1</th><th>Meaning</th></tr><tr><td>1</td><td>0</td><td>1</td><td>0</td><td>0</td><td>1</td><td>0</td><td>WUPA</td></tr><tr><td>0</td><td>1</td><td>0</td><td>0</td><td>1</td><td>1</td><td>0</td><td>REQA</td></tr></table><br><br>EMV Level 1 Contactless Interface Specification, Version 3.2, Section 5.3 at 128. |

3

US 6,931,465

| Claim # | Infringement |
|---|---|
| automatically responding to said request within a serial interface engine when said request is a first type of request that said serial interface engine is configured to recognize; | The Accused Instrumentalities perform a method that further comprises automatically responding to said request within a serial interface engine when said request is a first type of request that said serial interface engine is configured to recognize. |
| | The PICC's central processing unit ("CPU") acts as the serial interface engine which automatically processes requests it is configured to recognize, such as, e.g., a WUPA and REQA Response (ATQA). |
| | **5.3.2    WUPA and REQA Response (ATQA)** |
| | In response to the WUPA and REQA commands, a PICC of Type A, depending on its state (see Chapter 7) will return an ATQA with a length of two bytes. The ATQA is transmitted within a standard frame without CRC_A and coded as specified in Table 5.3 and Table 5.4. |
| | EMV Level 1 Contactless Interface Specification, Version 3.2, Section 5.3.2 at 128. |

4

**US 6,931,465**

| when said request is a second type of request that said serial interface engine is not configured to recognize, passing said request to an external circuit; | The Accused Instrumentalities perform a method that further comprises, when said request is a second type of request that the serial interface engine is not configured to recognize, passing said request to an external circuit.<br><br>For instance, for requests requiring cryptographic operations beyond the CPU's capability, such as generating the Local Cryptogram (EDA-MAC) during local authentication, the CPU passes the request to a cryptographic coprocessor external to the CPU. In Book E, the EDA-MAC computation involves AES-CMAC and AES-CMAC+ operations over transaction data, which the CPU is not configured to perform directly. The CPU forwards the necessary data (e.g., IAD-MAC Input Data) to the coprocessor to generate the cryptogram.<br>*EMV Contactless Specifications for Payment Systems, Book E - Security and Key Management v1.1*, Section 3.2 "Local Cryptogram," p. 20-22. |

5

US 6,931,465

| Claim # | Infringement |
|---|---|
| |  **Figure 3.2 – Local Cryptogram Computation** <br><br> *EMV Contactless Specifications for Payment Systems, Book E - Security and Key Management v1.1*, Figure 3.2 "Local Cryptogram Computation," p. 21. |

6

US 6,931,465

| receiving a response to said request from said external circuit when said request is of said second type; and | The Accused Instrumentalities perform a method that further comprises  receiving a response to said request from said external circuit when said request is of said second type.<br><br>For instance, the PICC's CPU receives the response from the cryptographic coprocessor after the second type of request is processed. Specifically, the coprocessor returns the computed EDA-MAC, which authenticates the transaction data, including the Application Cryptogram and Issuer Application Data (IAD). The CPU then prepares this data for transmission to the PCD host. *EMV Contactless Specifications for Payment Systems, Book E - Security and Key Management v1.1*, Section 3.2 "Local Cryptogram," p. 22-23.<br><br>The IAD-MAC authenticates the transaction data listed in Table 3.2.<br><br>The 8-byte IAD-MAC is computed by the Card as follows:<br><br>• Concatenate '0000' with the IAD-MAC Input Data in Table 3.2. Note that the Card is personalised with SDA Hash which is the hash of at least the AIP value.<br><br>• Compute IAD-MAC by applying AES-CMAC+ over the concatenated data with the session key for integrity $SK_I$ (Card):<br><br>IAD-MAC = Leftmost 8 bytes of AES-CMAC+ $(SK_I)$ [0000 \|\| IAD-MAC Input Data]<br><br>The EDA-MAC authenticates the Application Cryptogram and the IAD-MAC to the Reader.<br><br>*EMV Contactless Specifications for Payment Systems, Book E - Security and Key Management v1.1*, Section 3.2 "Local Cryptogram," p. 22. |

US 6,931,465

| Claim # | Infringement |
|---|---|
| | The 8-byte EDA-MAC is computed by the Card as follows:<br><br>• Concatenate '0000' with the Application Cryptogram and the IAD-MAC (without tags and lengths).<br><br>• Compute EDA-MAC by applying AES-CMAC over the concatenated data with the session key for integrity $SK_I$ (Card):<br><br>EDA-MAC = Leftmost 8 bytes of AES-CMAC ($SK_I$) ['0000' \|\| AC \|\| IAD-MAC]<br><br>*EMV Contactless Specifications for Payment Systems, Book E - Security and Key Management v1.1,* Section 3.2 "Local Cryptogram," p. 23. |

8

US 6,931,465

| passing on said response to said host. | The Accused Instrumentalities perform a method which further comprises passing on said response to said host.<br><br>The PICC's CPU sends the response, including the EDA-MAC and encrypted transaction data, back to the PCD host as part of the secure channel communication. Book E details that sensitive data, such as the Application Cryptogram and IAD, is encrypted using AES-CTR with the session key for confidentiality (SKc) and transmitted to the PCD in the GENERATE AC response message. This ensures secure communication with the host for authentication purposes.<br>*EMV Contactless Specifications for Payment Systems, Book E - Security and Key Management v1.1*, Section 2.2 "Privacy Protection," p. 16-17. |

US 6,931,465

| Claim # | Infringement |
|---|---|
|  | <br><br>EMV Contactless Specifications for Payment Systems, Book E - Security and Key Management v1.1, Section 2.2 "Privacy Protection," p. 16-17. |

**Caveat**: The EMVCo specifications cited herein (including, but not limited to, EMV Books 1–3, Contactless Books A–E, and the Level 1 Contactless Interface Specification) are component volumes of a single integrated EMV standard. Each Book governs a different architectural layer (e.g., physical interface, protocol, security, application processing), and they are expressly cross-referenced and interdependent. An EMV-compliant payment card must implement the coordinated requirements across these

**US 6,931,465**

volumes.  Accordingly, citations to multiple EMV Books reflect different functional aspects of the same integrated EMV system implemented in the Accused Instrumentalities.